IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| CRISTINA D. JOHNSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 6:14cv00023** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Cristina D. Johnson ("Johnson") challenges the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI"), disability insurance benefits ("DIB"), and child's insurance disability ("CIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Johnson asserts that the case should be remanded to the Commissioner to consider additional evidence submitted to the Appeals Council. I agree that the additional evidence submitted to the Appeals Council is new, material, and should be considered by the Commissioner. Accordingly, I **RECOMMEND DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16), **GRANTING in part** Johnson's Motion for Summary Judgment (Dkt. No. 14), and remanding this case for further administrative consideration consistent with this Report and Recommendation.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Johnson failed to demonstrate that she was disabled under

1

the Act.[1]  See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted).  The final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Johnson protectively filed for SSI, DIB, and CIB on March 23, 2011, claiming that her disability began on December 1, 2005.  R. 240-56.  Her date last insured was March 31, 2013.  R. 89.   The Commissioner denied Johnson's applications at the initial and reconsideration levels of administrative review.  R. 89-121, 122-61.  On May 15, 2013, ALJ Mary C. Peltzer held a hearing to consider Johnson's disability claim.  R. 56-87.  Johnson represented herself at the hearing, which included testimony from Johnson and vocational expert Karen Krull.  Id.

On August 8, 2013, the ALJ entered her decision analyzing Johnson's claim under the familiar five-step process[2] and denying Johnson's claim for benefits.  R. 29-55.  The ALJ found

---

[1] The Act deems a person disabled for SSI purposes "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work.  Rather, a claimant must show that her impairments prevent him from engaging in all forms of substantial gainful employment given her age, education, and work experience.  See 42 U.S.C. § 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether he can perform other work.  Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

that Johnson suffered from morbid obesity, mild facet degeneration of the lumbar spine, obstructive sleep apnea, and diabetes mellitus (Type II). R. 35-36. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 36-37. The ALJ further found that Johnson retained the RFC to perform light work, [3] except work involving:

> walking and standing limited to 2 hours per day with walking limited to increments of 30 minutes; no foot controls; occasional climbing stairs/ramps; no climbing ladders, ropes, or scaffolds; frequent balancing; occasional stooping; no kneeling, crouching, or crawling; no reaching overhead; avoidance of concentrated exposure to respiratory irritants (such as dust and fumes) and workplace hazards (such as dangerous moving machinery and unprotected heights); and no work where the pace of productivity is dictated by an external source over which she has no control (such as assembly lines and conveyor belts).

R. 37. The ALJ determined that Johnson had no past relevant work, but could work at jobs that exist in significant numbers in the national economy such as surveillance system monitor, document preparer, and addressor/sorter. R. 48-49. Thus, the ALJ concluded that Johnson was not disabled. R. 49.

Johnson retained counsel after receipt of the unfavorable decision and submitted additional evidence to the Appeals Council. R. 2-3,356-57. On May 12, 2014, the Appeals Council denied Johnson's request for review (R. 4-10), and this appeal followed.

## ANALYSIS

Johnson argues that the additional records submitted to the Appeals Council may have caused a reasonable ALJ to reach a different conclusion, and thus, remand is warranted to allow the ALJ to review the record as a whole. The Appeals Council accepted the records Johnson

---

[3]An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite her limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by him and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id.

3

submitted from her physicians and mental health providers.  The key records on appeal are Johnson's mental health treatment records and a medical source statement from her treating psychiatrist Michael Tyler, M.D.  In her decision denying benefits, the ALJ considered Johnson's bipolar disorder, posttraumatic stress disorder ("PTSD"), panic disorder, and major depressive disorder, but found them non-severe in nature and causing no more than minimal limitations in the performance of basic mental work activities.  R. 35.  The Appeals Council accepted all of Johnson's additional records but found "that this information does not provide a basis for changing the Administrative Law Judge's decision."  R. 5.  I find that remand is proper in light of this additional psychological evidence to allow the ALJ to consider the evidence in the record as a whole.

When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision."  Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991).  Evidence is new if it is not duplicative or cumulative.  See Meyer v. Astrue, 662 F.3d 700, 704–05 (4th Cir. 2011) (citing Wilkins, 953 F.2d at 96).  Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.  Wilkins, 953 F.2d at 95-96.  The Appeals Council will consider the additional evidence "only where it relates to the period on or before the date of the [ALJ's] hearing decision."  Meyer, 662 F.3d at 704-05  (citing 20 C.F.R. § 416.1470(b)).  The Appeals Council does not require good cause to admit previously existing records.  See Wilkins, 953 F.2d at 96.  Upon the Appeals Council's denial of Johnson's request for review, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.981.  The Appeals Council does not have to provide express, specific findings on the record regarding a claimant's

4

additional evidence. As the Fourth Circuit clarified in Meyer, "nothing in the Social Security Act or the regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review." Meyer, 662 F.3d at 705; see also Hollar v. Comm'r Of Soc. Sec. Admin., 194 F.3d 1304, at *1 (4th Cir. 1999) (noting that the "regulation addressing additional evidence does not direct that the Appeals Council announce detailed reasons for finding that the evidence did not warrant a change in the ALJ's decision").

This court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." Wilkins, 953 F.2d at 96; see also Hollar, 194 F.3d at *2 (citing Browning v. Sullivan, 958 F.2d 817, 822-23 (8th Cir. 1992) (considering whether newly submitted evidence may change the ALJ's finding). "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." Davis v. Barnhart, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Thus, when faced with new evidence, a court must reconcile its duty under Wilkins to review the entire record including the new evidence to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts. See Davis, 392 F. Supp. 2d at 751.

Courts in this district have achieved that balance by reviewing the record as a whole to determine if the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports. If the new evidence creates such a conflict, there is a reasonable possibility that it would change the outcome of the case, and the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. If such conflicts are not present, the case can be decided on the existing record without a remand.

5

Id. (citing Bryant v. Barnhart, No. 6:04cv000017, 2005 WL 1804423, *5 (W.D. Va. Jan 21, 2005); Smallwood v. Barnhart, No. 7:03cv00749, slip op. at 2 (W.D. Va. Oct. 19, 2004); Ridings v. Apfel, 76 F. Supp. 2d 707, 709 n. 6 (W.D. Va. 1999); Thomas v. Commissioner, 24 F. App'x 158, 162, 2001 WL 1602103, at *4 (4th Cir. 2001) (unpublished opinion); McConnell v. Colvin, No. 2:02cv00005, 2013 WL 1197091, at *7 (W.D. Va. March 25, 2013)).

Here, the ALJ reviewed all of the mental health evidence before her at the time of decision. The ALJ did not address Johnson's mental health evidence at step three of her analysis (R. 36-37), but reviewed her Function Report and determined that Johnson had no severe mental impairments, no limitations in daily living, mild social functioning limitations, and no limitations in concentration, persistence, or pace. R. 35-36. She thoroughly evaluated Johnson's mental health ailments in her development of the RFC. The ALJ discussed Johnson's July 2007 diagnoses of PTSD and depressive disorder from Central Virginia Community Services ("CVCS"), May 2009 Individual Service Plan from CVCS noting a GAF score of 65, and subsequent discharge from CVCS in May 2010 for noncompliance. R. 40-42. The ALJ mentioned Johnson's June 2011 appointment with Walter Beverly, M.D., where she reported her bipolar disorder was doing "pretty well" but wanted to restart Abilify. R. 43. Johnson returned for a psychiatric evaluation at CVCS in July 2012, and the ALJ noted diagnoses of PTSD, major depressive disorder, and panic disorder with a GAF score of 50. R. 45-46. The ALJ assessed Johnson's continued treatment at CVCS, considering her complaints of occasional homicidal thoughts, hallucinations, suicidal ideation, depression, and anger at her October 2012 and February 2013 appointments; she also noted that Johnson's medications were altered and her GAF scores ranged from 48 to 49. R. 46. The ALJ mentioned non-psychiatric doctors' notes about Johnson's general mood, which included a denial of depression and anxiety in September

6

2011. R. 39-44. The ALJ gave little weight to Johnson's GAF scores and found that her score range of 41 to 50 (indicating severe limitations) did not preclude her from employment.[4] R. 47.

The ALJ considered Johnson's testimony about suffering from anxiety and depression, but only found her testimony partially credible. R. 38. In regards to credibility for Johnson's mental health, the ALJ found that Johnson "has not generally received the type of medical treatment one would expect for a totally disabled individual or for the degree of limitations alleged" and the record did not contain any opinions from treating psychologists indicating functional limitations. R. 46-47. The ALJ found that Johnson faced no mental limitations and did not include any in the RFC.[5] R. 37. After the ALJ's decision, Johnson submitted a medical source statement from Johnson's treating psychiatrist Michael Tyler, M.D. and treatment records from Wishing You Well Counseling and Horizon Behavioral Health.[6] R. 1037, 1267-1308, 1327-36, 1337-73.

Horizon Behavioral Health supplied the majority of Johnson's newly submitted mental health records. R. 1267-1308, 1337-73. Case management notes from March and April 2013 identify complaints of a quick temper, depression, and thoughts of harming others. R. 1305-06. Treatment progress notes from Dr. Tyler and his associates, dated May 10, 2013 through March 28, 2014, diagnose Johnson with PTSD, mood disorder, and psychotic disorder, and provide

---

[4] State agency psychological consultants also determined that Johnson did not have a severe mental impairment (R. 93-94, 127-28), but the ALJ did not specifically address their opinions in her decision.

[5] The RFC does include a limitation of "no work where the pace of productivity is dictated by an external source over which she has no control (such as assembly lines and conveyor belts)." R. 37. However, the ALJ explained this limitation was related to her ability to control her pain. R. 48.

[6] Johnson's mental health impairments are the focus of this appeal, and thus her physical records are not reviewed. See generally, R. 1034-36, 1039-1266, 1309-26. Although some of the records note mental health diagnoses in Johnson's medical history, they do not specifically treat mental health issues. The only relevant mental health information from these records are (1) Johnson reported at the Lynchburg General Hospital that she had no thoughts of harm to herself for others on December 12, 2011 (R. 1229), and (2) Johnson's depression screening at Amherst County Community Health Center showed that she has moderately severe depression without suicidal or homicidal ideation on May 29, 2013. R. 1317.

7

regular mental status examinations and assessments of Johnson's social relationships, legal involvements, health problems, and other personal areas. R. 1267-1373. Johnson's mood fluctuated with symptoms of depression, paranoia, anxiety, frequent anger, and hallucinations throughout this time period, and her GAF scores ranged from 48 to 57.[7] <u>Id.</u> Her mental status examinations generally were unremarkable. <u>See, e.g.</u>, R. 1268, 1271, 1274, 1289, 1293, 1337, 1365. The record shows some noncompliance with treatment. <u>See, e.g.</u>, R. 1304-07.

The treatment notes also document Johnson's challenges communicating with others and anger; one particular incident involved Johnson's eviction because she "said some things that [Johnson] probably shouldn't have said and now [the landlord] wants [her] out this week." R. 1273; <u>see also</u> R. 1350-51, 1363. Johnson regularly was assessed as having a "marked" lack of social interaction and "marked" conflictual social relationships. <u>See, e.g.</u>, R. 1268, 1271, 1286, 1293, 1349, 1361. A clinician referred Johnson to therapy specifically to address anger management. R. 1292. Johnson reported improved feelings of agitation in March 2014, but still was unmotivated to find employment because "[i]f I try to work somewhere, it may not last because of how I am." R. 1367. Although the treatment notes mention Johnson is a "good caretaker to [her] four nieces and nephews" (R. 1269), and that she often could manage her daily needs (R. 1280), the notes also are riddled with references to anger and challenges with socialization.

Coinciding with her treatment at Horizon Behavioral Health, Johnson sought therapy from Wishing You Well Counseling Center. R. 1327-36. Johnson self-reported memory problems, difficulty making decisions, thoughts of violence, anxiety, depression, angry outbursts, and violent behaviors. R. 1334-35. Her intake information sheet mentions a prior suicide

---

[7] Johnson's depression briefly worsened in response to her mother's passing in February 2014. R. 1357-58.

8

attempt, physical abuse, and sexual abuse. R. 1332. Four therapy notes from September through November 2013 review discussions of family stressors and her ability to cope with them. R. 1327-30. Johnson also previously had attended therapy due to ongoing psychosocial stressors and childhood trauma/sexual abuse issues at the Courtland Center. R. 1280.

Dr. Tyler of Horizon Behavioral Health submitted a medical source statement dated August 23, 2013, noting diagnoses of PTSD, mood disorder, and psychotic disorder. R. 1037. Dr. Tyler checked that Johnson cannot understand, carryout, and remember simple instructions; cannot respond appropriately to supervision, coworkers, and usual work situations; cannot deal with stress inherent to simple work; and cannot make judgments commensurate with functions of unskilled work. Id. He anticipates that Johnson's mental health symptoms will significantly and frequently interfere with her attention and concentration to perform simple tasks, and cause more than three days per month of absence. Id. Dr. Tyler provides no explanation for these limitations, but claims Johnson has been affected by them for more than eight years. Id.

I find that Johnson's additional psychological evidence meets the requirements of Wilkins, and that remand is proper for full consideration of these records. The additional psychological treatment records and medical source statement are new and not cumulative with the record. The administrative record before the ALJ included diagnoses, minimal treatment records, and state agency psychological consultants' opinions; however, the record did not include a medical source statement from a treating physician and missed one year's worth of mental treatment, causing the ALJ to review what appeared to be sporadic mental health treatment. The ALJ has not had an opportunity to see the content of this new evidence.

These records also relate back to the relevant time period. The new mental health records predate and postdate the ALJ's August 2013 decision. However, Johnson has struggled with

9

mental health issues, particularly PTSD and depression, since at least since 2007 (R. 40); the mental health impairments from the newly submitted records are the same as those at the heart of this appeal. No evidence of an intervening event has been submitted to suggest that a change in mental health occurred from the time of the ALJ's decision through her last submitted record. Given that Johnson's mental health evidence extends only months after the ALJ's decision, the evidence still is relevant to the adjudication period because it is unlikely that Johnson's mental health changed within a matter of months. See McGinnis v. Astrue, 709 F. Supp. 2d 468, 473 (W.D. Va. 2010) (remanding a denied claim to review additional records because the claimant's severe depression and intellectual difficulties likely did not change within the few months after the ALJ's decision).

The main point of contention on appeal is whether Johnson's additional psychological evidence could reasonably change the outcome of the Commissioner's decision. Dr. Tyler's medical source statement supports a finding that Johnson cannot be employed due to her psychological disabilities. R. 1037. Dr. Tyler's opinion provides very little information other than his checked responses that Johnson cannot work with simple instructions, cannot respond to the stress of simple work, cannot make the judgments required of simple work, and likely would miss more than three days of work per month. R. 1037. Courts in the Fourth Circuit have recognized the limited probative value of such checkbox opinion forms. See Leonard v. Astrue, No. 2:11cv00048, 2012 WL 4404508, at *4 (W.D. Va. Sept. 25, 2012) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Such check-the-box assessments without explanatory comments are not entitled to great weight, even when completed by a treating physician.")). However, the ALJ conceivably could grant at least some weight to Dr. Tyler's opinion given his and his associates' treatment records from Horizon Behavioral Health. The records from

10

Horizon Behavioral Health provide treatment information previously missing from the record. Importantly, the additional records bring to light the severity of Johnson's socialization and anger problems that were only minimally discussed at step three and not clearly addressed in the development of the RFC. As the vocational expert noted at Johnson's hearing, no jobs would be available for Johnson if the ALJ found she could have no contact with the public. R. 85-86. The court agrees with Johnson that these additional medical records could change the ALJ's disability decision because they lend support to Johnson's subjective complaints and show a more consistent treatment for her mental health conditions.

Ultimately, it is not up to this court to decide whether Dr. Tyler's opinion and the additional treatment records have any impact on this decision. The law is clear that "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with the reviewing court." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) (citing Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir. 1993)). In this case, no fact finder has made any findings as to Dr. Tyler's medical source statement or the additional psychological treatment records–particularly those addressing Johnson's socialization and anger issues. The Commissioner may be correct that the ALJ will not change her decision and that the new evidence demonstrates conservative treatment, bouts of noncompliance, and an overall similar story as the records previously submitted to the ALJ. However, the additional evidence includes sufficiently contradictory treatment and opinion evidence that it at least calls into question the ALJ's determination that Johnson has no severe mental health impairments and no functional limitations arising from them. Dr. Tyler's medical source statement directly conflicts with the ALJ's findings, and his opinion that Johnson cannot perform the social and intellectual requirements of unskilled work ostensibly could change the ALJ's review of the record. Johnson's repeated problems with anger management throughout

11

her treatment records may push against the ALJ's finding that she has only mild limitations in social functioning. The fact finder must make determinations regarding this competing evidence. See Meyer, 662 F.3d at 707. All of Johnson's psychological records are new, relate back to the relevant time period, and include diagnoses that may require additional restrictions, both by the ALJ and by any state agency examiners who did not have the opportunity to review these records.

In light of the conflict between the ALJ's finding that Johnson was not disabled and the additional psychological records, I am unable to determine whether substantial evidence supports the final decision of the Commissioner to deny benefits to Johnson. The subsequent psychological evidence calls into question whether the objective evidence in fact did not support a finding of disability. The ALJ did not have an opportunity to consider Dr. Tyler's mental health evaluation of Johnson or many of the supporting treatment records. The ALJ has not evaluated what, if any, these new records and opinion show about Johnson's functional ability. The court cannot speculate as to the influence these records may have on the ALJ's decision. It may be that these records do not alter the outcome of the ALJ's analysis. That decision does not rest with the court, however, and as there is a reasonable probability that the additional evidence will change the outcome, the law requires that I remand the case. See, e.g., Burton v. Colvin, CA 4:11-03335-CMC, 2013 WL 3551120, at *3 (D.S.C. July 11, 2013) ("In light of the new evidence that appears to conflict with one or more critical bases in the ALJ's opinion, and the lack of explanation by the Appeals Council as to why that new evidence did not affect Plaintiff's disability determination, the court cannot say that the ALJ's decision is supported by substantial evidence."). I therefore recommend remanding Johnson's claim under sentence four of 42 U.S.C. § 405(g) for consideration of this additional evidence and the record as a whole.

## Conclusion

Accordingly, I recommend that the defendant's motion for summary judgment be **DENIED**, Johnson's motion for summary judgment be **GRANTED in part**, and this case be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g) with instructions that the ALJ consider all of the psychological records submitted to the Appeals Council.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: August 14, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge